## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

DAVID KISSI,

                Plaintiff,

     v.

DAVID PANZER, *et al.*,

                Defendants.

Civil Action No. 08-1870 (RBW)

## MEMORANDUM OPINION

This matter is before the Court on the joint motion to dismiss filed on behalf of
defendants EMC Mortgage Corporation and David Panzer, Esq.[1]  For the reasons discussed
below, the Court will grant the defendants' motion and will dismiss this action as against all the
defendants.

### I.  BACKGROUND

In order to place the allegations of the plaintiff's complaint in context, the Court refers to
a prior decision in a related case:

> Plaintiff David Kissi ("Kissi") and his wife, Edith R. Truvillion
> ("Truvillion"), purchased real property at 4303 Ammendale Road in
> Beltsville, Maryland (the "Ammendale Road property") in December
> 1999 for $ 110,000 with funding from Ameriquest of California.  In

---

[1]     Also before the Court are "A Rule 67 Motion to Withdraw Funds From
Ammendale Living Trust Court Escrow Account" [Dkt. #33] and the plaintiff's motion for
summary judgment [Dkt. #34].  The Court denies the former motion because the escrow account
pertained to civil litigation before the United States District Court for the District of Maryland, a
matter over which this Court has no jurisdiction.  The Court denies the latter motion because it
fails to comply with Rule 56 of the Federal Rules of Civil Procedure and Local Civil Rule 7(h).

> 2004, Kissi and Truvillion secured a mortgage on the property of $
> 210,000 from Wells Fargo Bank, N.A., of which approximately $
> 100,000 was a cash payment to the mortgagors.  On August 16, 2004,
> Truvillion executed a Promissory Note, and both Kissi and Truvillion
> executed a Deed of Trust securing the Promissory Note.    The
> Promissory Note provided for an adjustable interest rate.    EMC
> Mortgage Corporation ("EMC") became the holder of the Promissory
> Note, and EMC appointed Joseph V. Buonassissi, II ("Buonassissi")
> and others as substitute trustees in July 2005.

*Kissi v. EMC Mortgage Corp.*, 627 F. Supp. 2d 27, 29-30 (D.D.C. 2009) (internal citations to the

record omitted), *appeal docketed*, No. 09-7077 (D.C. Cir. July 21, 2009).  The plaintiff and his

wife defaulted on the loan, and on July 27, 2005, Buonassissi and the other substitute trustees

initiated foreclosure proceedings in the Circuit Court for Prince George's County, Maryland.  *Id.*

David Panzer, Esq. ("Panzer") represented EMC in the foreclosure case and in the appeal of the

foreclosure case before the Maryland Court of Special Appeals.[2]  Memorandum in Support of

EMC Mortgage Corporation and David Panzer's Joint Motion to Dismiss ("Defs.' Mem."),

Exhibit ("Ex.") 1 ("Panzer Decl.") ¶ 4.

In this action, the plaintiff alleges that EMC, Panzer, and the seven other defendants

"conspired in bad faith to fraudulently acquire the [p]laintiff's property located at 4303

Ammendale Rd., Beltsville, MD" in violation of 18 U.S.C. §§ 1952 and 1957 (2006).  Complaint

("Compl.") at 2.  He further alleges that Elias and Cecilia Osefo purchased the Ammendale Road

property at a foreclosure sale for $310,000 and, in turn, sold the property to Patrick Ogbeide for

$421,000 in a transaction involving William Ampofo, Benedict Akanegbu and Avalar Smart

---

[2]      The defendants have attached to their opposition to the plaintiff's motion for
summary judgment a copy of the August 13, 2009 Opinion of the Maryland Court of Special
Appeals.  *See* Opposition to Plaintiff's Motion for Summary Judgment, Ex. A.  This Opinion has
no bearing on the matters before this Court.

Choice Realty.  *Id.*

 According to the plaintiff, "the [d]efendants have developed a pattern of taking various assets of mainly African American property owners through perjury and false pretenses."  *Id.* at 3.  The Osefos allegedly obtained "a subsidized interest rate loan because they had sworn falsely that 4303 Ammendale was going to be their principal residence," yet they "never lived there even though Federal/Maryland credit statutes require homeowners who are beneficiaries of government housing programs to stay put in such properties as their principal residence[s]."  *Id*. at 2.  "The new buyer, Patrick Ogbiede[,] subsequently lost the same property through foreclosure in 2008 after claiming it as his principal residence, but never living in it, thereby defrauding the lender."  *Id.* at 3.

 In this action, the plaintiff demands "82% of the net proceeds" of the Osefos' sale of the Ammendale Road property to Ogbiede, plus damages of $10 million.  *Id*. at 3.

## II.  DISCUSSION[3]

 On November 5, 2008, EMC and Panzer filed a joint motion to dismiss on three grounds: (1) that the Court lacks personal jurisdiction over them, (2) that venue in this district is improper, and (3) that the complaint fails to state a claim upon which relief can be granted.[4]  Defs.' Mem. at

---

  [3] This matter was removed to this Court from the Superior Court of the District of Columbia on October 29, 2008.  Notice of Removal [Dkt. #1].  Although summonses were issued by the Superior Court for all the defendants, *see id.*, Ex. 1 (summonses), it does not appear that the defendants were ever served.  For purposes of this Memorandum Opinion, however, the Court presumes without deciding that service of process has been effected properly on all the defendants.

  [4] The defendants also argue for dismissal of the complaint on the ground that its claims are barred under the doctrine of res judicata and the issues raised therein are barred under the doctrine of collateral estoppel.  *See* Defs.' Mem. at 13-19.  The Court previously decided that
(continued...)

7-13, 19-22.  On December 1, 2008, the plaintiff filed a document entitled, "A 28 USC § 1746 Affidavit (#1901) Supplement to Opposition to Dismiss Request for Transfer to Maryland" [Dkt. #6], with exhibits, which the Court construes collectively as his opposition to the defendants' motion to dismiss ("Pl.'s Opp'n").  However, this opposition offers no meaningful response to the arguments the defendants set forth in their motion.  Instead, the plaintiff's submission pertains almost entirely to the criminal and bankruptcy proceedings in the United States District Court and the United States Bankruptcy Court for the District of Maryland, and refers to parties who are not named defendants to this action.  *See generally* Pl.'s Opp'n at 1-5.  The Maryland proceedings have concluded, and this Court has no authority to review them or to relieve the plaintiff of their consequences.

Because the plaintiff's opposition fails to address the defendants' arguments, the Court may treat the defendants' motion as conceded.  *See Palmer v. GMAC Commercial Mortgage*, 628 F. Supp. 2d 186, 193 (D.D.C. 2009) (citing *Fox v. Am. Airlines, Inc.*, 295 F. Supp. 2d 56, 58 (D.D.C. 2003), *aff'd*, 389 F.3d 1291 (D.C. Cir. 2004)) ("Where a party addresses some but not all arguments raised in a motion to dismiss, courts in this district treat such arguments as conceded."); *Delaney v. District of Columbia*, 612 F. Supp. 2d 38, 41 n.3 (D.D.C. 2009) (granting as conceded two motions to dismiss because the plaintiff failed to file a response to them); *Buggs v. Powell*, 293 F. Supp. 2d 135, 141 (D.D.C. 2003) (holding that "when a plaintiff

---

[4](...continued)
the plaintiff cannot challenge in this court the decision of the Circuit Court for Prince George's County, Maryland with respect to the foreclosure sale of the Ammendale Road property or any issues or claims arising therefrom.  *See Kissi v. EMC Mortgage Corp.*, 627 F. Supp. 2d at 32-34. For this reason, the Court will deny the plaintiff's motions to amend the complaint [Dkt. #27, 30], as the proposed amended pleadings seek to relitigate matters which already have been decided by the Maryland courts or which could have been pursued in those courts.

files an opposition to a dispositive motion and addresses only certain arguments raised by the

defendant, a court may treat those arguments that the plaintiff failed to address as conceded");

*Stephenson v. Cox*, 223 F. Supp. 2d 119, 122 (D.D.C. 2002) (dismissing various counts of

complaint as conceded, noting that "[t]he court's role is not to act as an advocate for the plaintiff

and construct legal arguments on his behalf in order to counter those in the motion to dismiss.").

Nevertheless, because the plaintiff is proceeding *pro se*, the Court will address each argument

briefly.

### A.  The Court Lacks Personal Jurisdiction Over the Defendants

"A District of Columbia court may exercise personal jurisdiction over a person domiciled

in, organized under the laws of, or maintaining his or its principal place of business in, the

District of Columbia as to any claim for relief."  D.C. Code § 13-422 (2001).  It is the plaintiff's

burden to make a *prima facie* showing that the Court has personal jurisdiction over the

defendants.  *See First Chicago Int'l v. United Exch. Co.*, 836 F.2d 1375, 1378-79 (D.C. Cir.

1988); *Walton v. Bureau of Prisons*, 533 F. Supp. 2d 107, 112 (D.D.C. 2008).  Moreover, the

"[p]laintiff must allege specific facts on which personal jurisdiction can be based; [he] cannot

rely on conclusory allegations."  *Moore v. Motz*, 437 F. Supp. 2d 88, 91 (D.D.C. 2006) (citations

omitted).

The complaint makes no allegations as to defendants' domicile in, organization under the

laws of, or the maintenance of a principal place of business in the District of Columbia.  Panzer

is "an attorney employed by the law firm Greenberg Traurig, LLP[,]" Defs.' Mem., Panzer Decl.

¶ 1, and "is a resident of the Commonwealth of Virginia," *id.* ¶ 3.  EMC "is a Texas corporation,

incorporated in Texas, with its principal place of business in Texas."  Defs.' Mem., Ex. 2

(Campbell Decl.) ¶ 3.  Although EMC has a registered agent in Maryland, *id.* ¶ 4, it has no record of having been served process, *id.* ¶ 5.  The plaintiff lists a Maryland address for each of the remaining defendants.  *See* Compl. at 1 (caption).

In this situation, the Court must engage in a two-part inquiry to determine whether it may exercise personal jurisdiction over non-resident defendants.  First, the Court must determine whether jurisdiction may be exercised under the District of Columbia's long-arm statute.  *See GTE New Media Servs., Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1347 (D.C. Cir. 2000).  Second, the Court must determine whether the exercise of personal jurisdiction satisfies the requirements of due process.  *Id.* (citing *United States v. Ferrara*, 54 F.3d 825, 828 (D.C. Cir. 1995)).  This second component of the analysis turns on whether a defendant's "minimum contacts" with the District of Columbia establish that "the maintenance of the suit does not offend traditional notions of fair play and substantial justice."  *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotation marks and citations omitted).  These minimum contacts must arise from "some act by which the defendant purposefully avails [himself] of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws."  *Asahi Metal Indus. Co., Ltd. v. Super. Ct. of Cal., Solano Cty.*, 480 U.S. 102, 109 (1988) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)).  In other words, "the defendant's conduct and connection with the forum State are such that [he] should reasonably anticipate being haled into court there."  *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

The District of Columbia long-arm statute allows the Court to exercise personal jurisdiction over a non-resident defendant with regard to a claim arising from the defendant's

conduct in:

| | | |
|---|---|---|
| (1) | transacting business in the District of Columbia; |
| (2) | contracting to supply services in the District of Columbia; |
| (3) | causing tortious injury in the District of Columbia by an act or omission in the District of Columbia; |
| (4) | causing tortious injury in the District of Columbia by an act or omission outside the District of Columbia if he regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia; |
| (5) | having an interest in, using, or possessing real property in the District of Columbia; |
| (6) | contracting to insure or act as surety for or on any person, property, or risk, contract, obligation, or agreement located, executed, or to be performed within the District of Columbia at the time of contracting, unless the parties otherwise provide in writing; or |
| (7) | marital or parent and child relationship in the District of Columbia[.] |

D.C. Code § 13-423(a) (2001).

Although EMC and Panzer may have transacted business or contracted to supply services in the District of Columbia, it does not appear that either has done so with respect to the events giving rise to the plaintiff's causes of action. As noted above, the plaintiff lists a Maryland address for each of the remaining defendants, and they are not alleged to conduct business, supply services, or to have caused the plaintiff tortious injury in the District of Columbia. In addition, the Ammendale Road property is located in Beltsville, Maryland, and any transaction involving this property necessarily occurred in Maryland. Moreover, not only the foreclosure proceedings but also any other litigation pertaining to the plaintiff's interest in the Ammendale Road property took place in the state and federal courts in Maryland. Notwithstanding the plaintiff's alleged residence in the District of Columbia, he does not appear to have suffered any

injury in the District of Columbia with respect to the Ammendale Road property. Absent any meaningful contacts with the District of Columbia, this Court's exercise of personal jurisdiction over the defendants would not comport with due process.

The Court therefore concludes that it cannot exercise personal jurisdiction over Panzer and EMC, nor any of the remaining defendants. *See, e.g., Buesgens v. Brown*, 567 F. Supp. 2d 26, 36 (D.D.C. 2008) (concluding that exercise of personal jurisdiction was improper absent a showing of a relationship between the plaintiff's allegations and claims against a defendant and the District of Columbia); *Cornell v. Kellner*, 539 F. Supp. 2d 311, 315 (D.D.C. 2008) (concluding that defendant's employment with the Internal Revenue Service, which is headquartered in the District of Columbia, is not a sufficient contact to support the exercise of personal jurisdiction under the District's long-arm statute).

### B. Venue in This District Is Improper

Where, as here, the district court's jurisdiction "is founded only on diversity of citizenship," a civil action may be brought only in:

> (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(a) (2006).

None of the defendants reside in the District of Columbia, and the events giving rise to the plaintiff's claims occurred in Maryland. Further, all the parties to this action either actively participated in or were parties to court proceedings or real estate transactions pertaining to

property located in Maryland.  On this record, the Court must conclude that venue in this district

is improper, as it is apparent that this action could and should have been brought in the United

States District Court for the District of Maryland.

Having reached this conclusion, the Court has the option of transferring this action to the

proper venue if doing so would be in the interest of justice, or dismissing the action.  28 U.S.C. §

1406 (2006).  The Court concludes that no meaningful purpose would be served by transferring

this action, and it will therefore be dismissed because the complaint fails to state a claim upon

which relief can be granted.

*C. The Complaint Fails to State a Claim Upon Which Relief Can Be Granted*

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the

factual allegations contained in the complaint."  *Atherton v. District of Columbia Office of the*

*Mayor*, 567 F.3d 672, 681 (D.C. Cir. 2009) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007))

(internal quotation marks omitted).  Although "detailed factual allegations" are not required to

withstand a Rule 12(b)(6) motion, a plaintiff must offer "more than labels and conclusions" to

provide "grounds" of "entitle[ment] to relief."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555

(2007).  Or, as the Supreme Court more recently stated, "[t]o survive a motion to dismiss, a

complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is

plausible on its face.'"  *Ashcroft v. Iqbal*, __ U.S. __, __, 129 S.Ct. 1937, 1949 (2009) (quoting

*Twombly*, 550 U.S. at 570).  A claim is facially plausible "when the plaintiff pleads factual

content that allows the court to draw a reasonable inference that the defendant is liable for the

misconduct alleged."  *Id*. (quoting *Twombly*, 550 U.S. at 556).  A complaint alleging facts which

are "'merely consistent with' a defendant's liability, . . . 'stops short of the line between

9

possibility and plausibility of 'entitlement to relief.'" *Id.* (quoting *Twombly* 550 U.S. at 557)
(brackets omitted).

### 1.   The Complaint Fails to Allege Fraud and Conspiracy

A party alleging fraud "must state with particularity the circumstances constituting
fraud." Fed. R. Civ. P. 9(b).  Thus, the pleader generally must "state the time, place and content
of the false misrepresentations, the fact misrepresented and what was retained or given up as a
consequence of the fraud." *Ellipso, Inc. v. Mann*, 460 F. Supp. 2d 99, 105 (D.D.C. 2006) (citing
*Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1278 (D.C. Cir. 1994)).

As to the plaintiff's civil conspiracy allegation, the elements of this claim are "(1) an
agreement between two or more persons; (2) to participate in an unlawful act, or a lawful act in
an unlawful manner; (3) an injury caused by an unlawful overt act performed by one of the
parties to the agreement; (4) which overt act was done pursuant to and in furtherance of the
common scheme." *Halberstam v. Welch*, 705 F.2d 472, 477 (D.C. Cir. 1983).  Conclusory
allegations of an agreement will not suffice. *Brady v. Livingood*, 360 F. Supp. 2d 94, 104
(D.D.C. 2004) (mere allegation that defendants "agreed among themselves" to subject plaintiff to
discriminatory acts, without alleging facts suggesting that the defendants were acting in concert
in furtherance of a shared goal of discriminating against him not sufficient) (footnote and
citations omitted); *Graves v. United States*, 961 F. Supp. 314, 321 (D.D.C. 1997) (dismissing
claim where plaintiff merely alleged that his former employer "colluded" with the Department of
Education to keep him underemployed, without putting forth "any facts showing the existence or
establishment of an agreement").

Here, the plaintiff's allegations of fraud and conspiracy are, at best, conclusory.  He

merely alleges that the "[d]efendants conspired in bad faith to fraudulently acquire the [p]laintiff's property located at 4303 Ammendale Road, Beltsville, MD." Compl. at 2.  Absent allegations as to the time, place and content of the defendants' alleged fraudulent acts, the fraud claim has been inadequately pled and fails to survive the defendants' motion to dismiss.  *See, e.g., Kissi v. EMC Mortgage Corp.*, 627 F. Supp. 2d at 27, 34-35; *U.S. ex rel. Brown v. Aramark Corp.*, 591 F. Supp. 2d 68, 75 (D.D.C. 2008) (quoting *U.S. ex rel. Joseph v. Cannon*, 642 F.2d 1373, 1385 (D.C. Cir. 1981)) (dismissing two counts of complaint for absence of allegations "regarding 'the time, place and content of the false misrepresentations, the fact[s] misrepresented and what was obtained or given up as a consequence of the fraud'").  Similarly, the plaintiff's conclusory allegation that "the joint [d]efendants . . . conspired to rip off him and his spouse," Compl. at 2, is inadequate.  *See McCreary v. Heath*, No. 04-0623 (PLF), 2005 WL 3276257, at *5 (D.D.C. Sept. 26, 2005) (dismissing conspiracy claim where the "complaint fail[ed] to allege the existence of any events, conversations, or documents indicating that there was ever an agreement or 'meeting of the minds' between any of the defendants . . .").  Nowhere in the complaint does the plaintiff allege the existence of an agreement among the defendants to engage in an unlawful act or an overt act done pursuant to and in furtherance of their common scheme.

Accordingly, the Court concludes that the complaint fails to adequately allege the fraud and conspiracy claims, and, therefore, these claims must be dismissed.

2.  There Is No Private Right of Action Under 18 U.S.C. §§ 1952 and 1957

It is unlawful for a person to engage in interstate travel or use the mail to further a racketeering enterprise, *see* 18 U.S.C. § 1952(a) (2006), or knowingly to engage "in a monetary transaction in criminally derived property" exceeding $10,000 in value, 18 U.S.C. § 1957(a)

(2006).  Generally, "in the criminal context, the Supreme Court has refused to imply a private

right of action in 'a bare criminal statute.'"  *Prunte v. Universal Music Group*, 484 F. Supp. 2d

32, 42 (D.D.C. 2006) (quoting *Cort v. Ash*, 422 U.S. 66, 79-80 (1975)).  And these criminal

statutes upon which the plaintiff relies do not create a private right of action.  *See Lucas-Cooper

v. Palmetto GBA*, No. 1:05-cv-00959, 2006 WL 2583407 at *10 (N.D. Ohio Sept. 7, 2006)

(concluding that 18 U.S.C. § 1957 is a criminal statute "which grant[s] no explicit private right of

action"); *Thompson v. Kramer*, No. 93-2290, 1994 WL 725953, at *15 (E.D. Pa. Dec. 29, 1994)

(concluding that 18 U.S.C. §§ 1956 and 1957 "provide by their plain language for criminal

penalties but not for private causes of action"); *Barrett v. City of Allentown*, 152 F.R.D. 50, 56

(E.D. Pa. 1993) ("No civil action has been held to exist under . . . 18 U.S.C. § 1952[.]");

*Schwartz v. F.S. & O. Assocs., Inc.*, No. 90-1606, 1991 WL 208056, at *2-3 (S.D.N.Y. Sept. 27,

1991) (finding that violations of  18 U.S.C. §§ 1952, 1956 and 1957 do not create private rights

of action).  The Court concludes, therefore, that the plaintiff's claims under 18 U.S.C. §§ 1952

and 1957 must be dismissed.

III.   CONCLUSION

For the foregoing reasons, the Court concludes that it lacks personal jurisdiction over all

the defendants and that venue in this district is improper.  Moreover, even if these defects could

be cured, which they cannot, the complaint is subject to dismissal because it fails to state claims

upon which relief can be granted.  Accordingly, the Court will grant the defendants' motion to

dismiss, and will dismiss the complaint without prejudice.[5]


_____/s/_____
REGGIE B. WALTON
United States District Judge

---

[5]     A separate Order dismissing this action was issued by the Court on September 30, 2009.